IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ERIC DANIEL KOLKEBECK,<br><br>          Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>          Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:14-cv-00514-CW-DBP<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

This matter was referred to the court under 28 U.S.C. § 636(b)(1)(B). (ECF No. 21.) Plaintiff Eric Kolkebeck alleges that Defendant, Home Depot U.S.A., Inc., unlawfully discriminated and retaliated against Plaintiff under the Americans with Disabilities Act ("ADA") when Defendant terminated him. (ECF No. 38.) Currently before the court is Defendant's motion for summary judgment on both of Plaintiff's claims. (ECF No. 50.) Defendant asserts that it terminated Plaintiff for violating company policy by being absent from the workplace while on duty. (*Id.*) Plaintiff asserts Defendant's proffered reason is pretextual, and that he was terminated because he stutters. (ECF No. 53.) The court heard oral argument on September 6, 2016, and took the matter under advisement. Based on the parties' briefing, oral argument, and for the reasons set forth below, the court will recommend the District Court grant Defendant's motion.

## FACTS

The following facts are undisputed unless otherwise noted. Defendant hired Plaintiff in April 2010 as a part-time sales associate in the garden department at a Home Depot Store in Salt

Lake City, Utah. (ECF No. 53 at 6; ECF No. 62.) In September 2010 Plaintiff transferred to the paint department. (ECF No. 53 at 6.) In November 2010 Plaintiff applied[1] to become supervisor of the paint department, but was not selected for that position. (*Id.* at 7) Instead, Patrick Reeve was promoted to that position. (*Id.* at 7.)

On April 1, 2011, Plaintiff received an annual performance review from Mr. Reeve who was aware of Plaintiff's stutter at the time of the review. (ECF no. 53 at 9.) Mr. Reeve rated Plaintiff higher than any other employee in the paint department at that time. (*Id.*). Plaintiff describes this review as "awesome." (*Id.* at 9–10.) Mr. Reeve suggested improvement in one area, stating that Plaintiff's "communication with other ass[ociates] needs work" and Plaintiff should "take time [to] make sure other ass[ociates] understand his directions." (*Id.* at 10.) No one ever indicated that this suggestion was related to Plaintiff's ability to speak. (*Id.* at 11.)

In June 2011 Plaintiff interviewed for a position as garden department supervisor, but neither Plaintiff nor the other interviewees were selected for the position. (*Id.* at 8.) Instead, the position was filled through lateral transfer from another department within the store. (*Id.* at 9.) Assistant Store Manager Ross Buchanan's interview notes indicate that Plaintiff "could not come up with any answer . . . [provided] short answers [with] no description . . . very short imprecise answers . . . [and] could not really answer some questions." (*Id.* at 8.) When discussing these notes in his deposition, Mr. Buchanan testified that he did not believe Plaintiff had any problem with his ability to communicate. (ECF No. 56, Ex. Z.) Around the same time, Plaintiff testified that he told Mr. Buchanan that Plaintiff felt discriminated against based on his stutter, but Defendant disputes this fact. (*See id.* at 33.)

---

[1] During the hearing, the parties disagreed about whether Plaintiff actually applied for this position. The court will assume that he did for purpose of its analysis. (*See* ECF No. 50 at 13 ("Kolkebeck applied for a paint department supervisor position in November 2010.").)

On June 15, 2011, Assistant Store Manager Vickie Dennis issued Plaintiff written discipline for reading at the paint desk while on duty. (ECF No. 53 at 11–12.) Plaintiff admitted in his deposition that he was reading at the paint desk, though there is an apparent disagreement over the number of times he did so. (*Id.*)

On August 6, 2011, Ms. Dennis again issued Plaintiff written discipline, this time for arriving late for several of his scheduled shifts. (ECF 53 at 12.) Plaintiff admits that he arrived late seven times without excuse. (*Id.*) The same day, Ms. Dennis also issued Plaintiff written discipline for failing to complete written assignments. (*Id.* at 12–13.)  Plaintiff admitted that he did not finish the assignments.[2] (*Id.* at 13.) Ms. Dennis was not aware that Plaintiff had made a discrimination complaint when she disciplined Plaintiff. (*Id.* at 17–18.) Also on August 6, Plaintiff alleges that he made a second complaint of discrimination to Mr. Sainsbury. Plaintiff alleges he told Mr. Sainsbury, "I would like to make a formal complaint of discrimination and retaliation regarding the write[-]up that was subsequent to my discussion with Mr. Buchanan." (ECF No. 56 at 34.) Defendant disputes this fact. (*Id.*)

On August 13, 2011, Plaintiff and his then-girlfriend Thais Ann Farr (also an employee of Defendant) left the store together at 3:43 p.m. while still on duty. (ECF No. 53 at 14.)  The couple drove to a nearby convenience store to get a drink and then returned and parked in Defendant's parking lot for an "emotional conversation." (*Id.* at 15.)  Store Manager Mark Sainsbury observed Plaintiff and Ms. Farr while they were driving.  (*Id.*)  Plaintiff returned to the store at 4:14 p.m. and Ms. Farr returned shortly thereafter. (*Id.*)

---

[2] Plaintiff argues in his brief that he did not admit this, but the deposition testimony cited indicates Plaintiff "got through as much as [he] could before . . . leav[ing] for the day." (*Id.*) Plaintiff testified the paperwork, which he did not turn in, was "gone" the next day. (*Id.*)

Defendant's Code of Conduct indicates that "[c]locking in for work and then leaving the work location for non-work[-]related reasons without clocking out," is considered failure to act with integrity and honesty and constitutes a major-work-rule violation. (*Id.* at 13.) A major-work-rule violation is "prohibited conduct that will normally result in termination of employment for a first offense." (*Id.*) Defendant's procedure requires employees to "clock out" if leaving the work location for any non-work-related reason. (*Id.* at 14.) Even if the employee leaves for a work-related reason, the employee must obtain permission from management. (*Id.*)

On August 22, 2011, Plaintiff and Farr were interviewed by Megan Nethery of Defendant's Associate Advice and Counsel Group and Assistant Store Manager Ryan Groves. (*Id.* at 15.) During the interview, Plaintiff admitted that he left the store premises even though he knew it violated Defendant's policy. (*Id.* at 16.) Immediately after the interview, Ms. Nethery recommended to Mr. Groves that Plaintiff's and Ms. Farr's employment be terminated. (*Id.*) Mr. Groves prepared notices of termination and terminated both employees. (*Id.*) Mr. Groves then sent Mr. Sainsbury a text message to tell him "what was going on." (ECF No. 56 at 23.) Ms. Farr is not disabled. (ECF No. 53 at 16.)

## DISCUSSION

### I. A genuine dispute of material fact precludes summary judgment on the matter of Plaintiff's purported disability under the ADA

"[T]o establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011) (internal quotation omitted). Unless the plaintiff can provide direct evidence of discrimination, the court

uses the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, if the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1038. If the defendant proffers a legitimate reason, the burden shifts back to plaintiff to show that the proffered reason is "pretextual." *Id.* "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007).

### a.  Parties' arguments

Defendant's first[3] argument challenges the first element of Plaintiff's prima facie case. Defendant asserts that the undisputed facts demonstrate that Plaintiff is not disabled based on his alleged stutter. Defendant argues that a diagnosis alone is insufficient to qualify as a disability and that Plaintiff must demonstrate that his stutter "substantially limits" one or more "major life activities." (ECF No. 50 at 14 (citing *Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x. 650 (10th Cir. 2014) (unpublished)).) Defendant notes that the Utah Labor Commission dismissed Plaintiff's charge because his stutter was only "episodic" and did not substantially limit his ability to speak. (ECF No. 50 at 14.)

Plaintiff makes several rebuttal arguments that fall into four categories. First, Plaintiff argues that Congress intended that the phrase "substantially limits" be construed broadly in favor of expansive application of the ADA. (ECF No. 53 at 32.) Plaintiff also argues that his stutter "substantially limits" his ability to communicate, citing primarily his own deposition testimony. (*Id.* at 33.) Next, Plaintiff argues that his treatment history and educational attainment are

---

[3] Defendant's first numbered argument addresses the viability of claims related to conduct prior to January 25, 2011. Plaintiff conceded that this conduct is relevant only to the issue of pretext and cannot form the proper basis of a separate discrimination claim. (*See* ECF No. 53 at 31.)

irrelevant to his alleged disability. Finally, Plaintiff argues that even if he cannot prove he is disabled, his retaliation claim survives because he had a good faith belief that Defendant violated the ADA. Plaintiff's counterarguments will be addressed in the order presented.

### b. Analysis

#### 1. Congressional intent

Plaintiff's argument regarding Congress' intent is correct, but the case Defendant cites explicitly applies the broad construction of "substantially limits" that Plaintiff suggests should be used here. *See Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 657 (10th Cir. 2014). Accordingly, while the court agrees that the term "substantially limits" should be broadly construed, this construction alone does not carry the day for Plaintiff. As Defendant pointed out during oral argument, this does not mean that a Plaintiff can claim to suffer a disability and maintain a lawsuit without presenting any evidence the Plaintiff suffers a disability.

#### 2. A jury should decide whether Plaintiff is substantially limited

Nonetheless, Plaintiff has presented sufficient evidence here to reach a jury on the issue of his disability. Even in the *Crowell* case Defendant cites, the Tenth Circuit noted, "whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury." *Crowell* at 657. Also, the *Crowell* case cites a prior published Tenth Circuit decision that likewise suggests that this subjective inquiry is best left to a jury: "This inquiry is based on an individual's 'own experience'—particularly where 'the impairment is one whose symptoms vary widely from person to person . . . .'" *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1143 (10th Cir. 2011). Here, Plaintiff claims that his stutter "affects the way [he] interviews for jobs and gives presentations at school." (ECF No. 53 at 32.) Likewise, he claims that his stutter affects his ability to concentrate. (*Id.*) Plaintiff provides specific examples of difficulties he had at his job related to his stutter. (*Id.*)

Defendant cites decisions from federal district courts in Pennsylvania and North Carolina that found plaintiffs who stuttered were not disabled as a matter of law. The court finds these cases distinguishable. The Pennsylvania case describes a plaintiff that provided no evidence whatsoever of a limitation caused by his disability. *See Ripple v. Olympic Steel, Inc.*, No. 12-2234, 2014 WL 509200, at *1 (M.D. Pa. Feb. 10, 2014). In that case, the plaintiff testified "that his stutter did not in any way affect his job performance . . . and does not claim that his stutter impacts other aspects of his life." *Id.* The present case is not the same because Plaintiff here claims that his stutter interfered with his communication with customers and coworkers and that it affects him at school. (*See* ECF No. 56 at 17–21.)

Likewise, the North Carolina case is similar. This pro se ADA claim was dismissed for failure to exhaust administrative remedies. *Bess v. Cty. of Cumberland*, No. 10-453, 2011 WL 3055289, at *7 (E.D.N.C. July 25, 2011). Nonetheless, the court stated that it would dismiss for the additional reason that the plaintiff did not allege that his stuttering affected any facet of his life, "such as working or communicating." *Id.* Even if the court was persuaded by this dictum from the District of North Carolina, Plaintiff testified that his stutter affects his ability to communicate and impacted him in his job and at school, unlike the plaintiff in *Bess*.

3.  Plaintiff's educational attainment and treatment are relevant, but not dispositive

Defendant points out that Plaintiff has not presented evidence of treatment for his stutter and mentions that Plaintiff has attained a master's degree. At the hearing, Defendant argued that Plaintiff must offer some objective evidence of his disability, for example treatment records. Plaintiff argues these materials are totally irrelevant.

None of the cases cited explicitly require Plaintiff to provide objective evidence of his stutter to corroborate his testimony. While the court might agree with Defendant that a complete

lack of any evidence of a disability might justify judgment as a matter of law, Plaintiff does offer evidence that he stutters apart from his own testimony. Defendant's employees corroborated Plaintiff's claim that he has a stutter. (ECF No. 53 at 33.) Unlike a case in which there is some question whether a disability exists that might cause a plaintiff's purported difficulties, the existence of Plaintiff's stutter is not in dispute. Thus, it appears Defendant's true contention on this point is that Plaintiff's stutter is not particularly severe or has little effect on Plaintiff's life. This inquiry is best left to a jury who can evaluate Plaintiff's credibility when speaking about his "own experience." *Carter* at 1143. Accordingly, the court finds that Plaintiff raised an issue of material fact that his stutter "substantially limits" his ability to communicate. Plaintiff's educational and treatment histories are both appear to be pertinent considerations. Yet these considerations should be made by a jury, not the court.

4. Plaintiff's good faith belief

Plaintiff correctly notes that, for purposes of his retaliation claim, he need not actually show that he has a disability. *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001) ("Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a qualified individual with a disability. By its own terms, the ADA retaliation provision protects any individual who has opposed any act or practice made unlawful by the ADA.") (quotations omitted). Defendant does not appear to argue otherwise.

Based on the foregoing, Plaintiff has raised a genuine issue of material fact about whether he suffers from a disability. Further, even if the District Court is later convinced that Plaintiff failed to establish a disability, summary judgment is still inappropriate on Plaintiff's retaliation claim because that claim may be brought even if Plaintiff is not disabled.

II.   **Even assuming Plaintiff raises a genuine dispute of material fact about whether he suffered discrimination, he does not produce evidence that could rebut Defendant's proffered legitimate reason for terminating Plaintiff**

a.   **Parties' arguments**

Defendant's second argument challenges the third element of Plaintiff's prima facie case (discrimination). Defendant's second argument also asserts that, even if Plaintiff can establish a prima facie case of discrimination, Defendant had a legitimate, nondiscriminatory, reason to terminate Plaintiff and Plaintiff cannot show that Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination.

Plaintiff responds that an inference of discrimination arises from several discrete incidents. Specifically, Plaintiff points to: the November 2010 promotion of Mr. Reeves over Plaintiff; an April 2011 performance review; a May 2011 refusal to allow Plaintiff to act as "Kids Club Coordinator;" a June 2011 interview with Mr. Buchanan; and Plaintiff's termination on August 22, 2011. Next, Plaintiff argues that disparate treatment between himself and certain alleged comparators, along with his work performance, show that Defendant's proffered reason for terminating Plaintiff is pretextual.

b.   **Analysis**

The court discusses evidence of Plaintiff's prima facie case of discrimination separately from some evidence bearing only on pretext, but notes that the evidence does tend to overlap. Additionally, as Plaintiff points out, several of the events discussed below do not establish discrimination, but all may be properly considered in the court's pretext analysis.

1.   *Prima facie discrimination case*

To make a prima facie showing of discriminatory conduct Plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision [to take adverse employment action]." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Adverse employment action means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003). "The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, [plaintiff] would be entitled to judgment as a matter of law." *Hilti* at 1324. The events Plaintiff discusses are addressed below in chronological order.

### A.  2010 Reeves promotion

Plaintiff acknowledges that he is precluded from using this event as evidence of a discrete act of discrimination. (ECF No. 53 at 36.) Instead, this event will only be considered for purposes of the court's pretext analysis.

### B.  April 2011 performance review

Plaintiff complains that he was discriminated against because his 2011 performance review indicated: "communication with other ass[ociates] needs some work" and that Plaintiff needed to "take time to make sure other ass[ociates] understand his directions." (ECF No. 53 at 10.) Plaintiff argues that "communication" refers to his stutter, but he offers no evidence to support his conclusion. This claim is undermined by the text Plaintiff cites. The review suggested Plaintiff had an issue communicating with other associates, not with everyone. This indicates the criticism was related not to Plaintiff's stutter, which he alleges impacted his interactions with even management, but that there was some problem unique to Plaintiff's communication with colleagues. Moreover, Plaintiff conceded that no one ever told him this note was related to his ability to speak. (*See* ECF No. 53 at 11.) Plaintiff's "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

Also, this is not adverse employment action because it does not represent "a significant change in employment status." *See* 337 F.3d at 1217. Plaintiff suggested during oral argument that this review left Plaintiff ineligible for promotion, but was unable to cite to any evidence to support this argument. Likewise, Plaintiff was interviewed for a potential promotion subsequent to this review and the review was not cited as a reason for denying Plaintiff the promotion he sought. *Infra* Part II.b.1.D. Likewise, the undisputed facts demonstrate that Kolkebeck himself regarded this review as "awesome" and was the best review given to any employee in his department. Accordingly, Plaintiff has not shown that the April 2011 performance review constitutes discrimination.

### C. "Kids Club Coordinator"

Plaintiff asserts that he was discriminated against because he "volunteered" to be a "Kids Club Coordinator" but Mr. Sainsbury "vetoed" the offer. (ECF No. 53 at 22–23; ECF No. 56 at 25.) By the very phrase Plaintiff uses to describe this event, he has not suffered "a significant change in employment status." 337 F.3d at 1217. This was a volunteer activity and the undisputed facts do not show this had any effect on Plaintiff's status or career. (*See* ECF No. 56 at 25.) Accoridngly, there is no adverse employment action. More fundamentally, Plaintiff does not even allege that this denial was related to his stutter. Thus, Plaintiff has not established that this event constitutes or evidences discrimination.

### D. June 2011 interview

As an initial matter, the court rejects Defendant's legal argument that Plaintiff did not suffer adverse action when he was denied this promotion. Defendant points out that no one was ultimately promoted to the position for which Plaintiff interviewed in 2011. Instead, Defendant filled the position through a lateral transfer. Defendant concludes that neither Plaintiff nor the other applicants suffered adverse action. (ECF No. 50 at 17 (citing *Merswin v. Williams Cos.,*

*Inc.*, 244 F. App'x 897 (10th Cir. 2007) (unpublished)).) The *Merswin* case does not support Defendant's position. In *Merswin*, the Tenth Circuit affirmed a finding of no adverse action where the plaintiff offered "no evidence that the position to which [plaintiff] referred was open, that [defendant] sought to promote any employee to that position, or that he had even applied for the job." *Id.* at 899. Contrarily, a position was available here, Plaintiff did apply, and Defendant sought to promote an employee to the open position, but ultimately elected to make a lateral transfer instead. Accordingly, *Merswin* does not suggest that Plaintiff did not suffer an adverse employment action. Instead, all candidates suffered an adverse action. Nonetheless, Plaintiff has not offered evidence that he was discriminated against based on his stutter.

Plaintiff argues the interview notes show Defendant discriminated against him. The court disagrees. The notes criticize Plaintiff for the content of his communication, not the manner of his speech. The interviewer, Mr. Buchanan, indicated that Plaintiff's answers were "very short . . . imprecise," and "too short and not forthcoming." (ECF No. 53 at 8.) Plaintiff concludes that these comments are directed at his stutter but does not offer any evidence beyond his own speculation. Facially, the comments indicate that Mr. Buchanan was unsatisfied with the substance of Plaintiff's statements, not the manner of his speech. Mr. Buchanan did not note that Plaintiff's answers were unintelligible, or that Plaintiff spoke slowly. Instead, he criticized the lack of clarity and the brevity of Plaintiff's answers. There is no apparent reasonable inference to draw that could suggest these comments were directed at Plaintiff's stutter, or any other aspect of Plaintiff's manner of speech.

Plaintiff attempts to connect the dots by arguing that other employees without a speech impediment received higher ratings than Plaintiff, but the evidence cited by Plaintiff suggests this difference rests on non-discriminatory grounds. Mr. Buchanan's interview notes reflect that

he was asked a question twice and "could not come up with any answer" and that another answer was "vague." (ECF No. 53, Ex. 5.) Also, when discussing these notes in his deposition, Mr. Buchanan testified that he did not believe Plaintiff had any problem with his ability to communicate. (ECF No. 56, Ex. Z.) Additionally, other non-disabled employees were denied the same promotion. Thus, Plaintiff offers no evidence that suggests he was discriminated against and has thus not established a prima facie case of discrimination for the June 2011 interview and failure to promote.

### E.  August 22, 2011 termination

Here, Plaintiff offers his strongest evidence in support of discrimination, though it is a very close question whether he has met even the low threshold required to establish a prima facie case. The adverse action is clear: termination. *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (defining adverse employment action as, in part, "firing" an employee). Yet, Plaintiff's proffered evidence of discrimination is largely inadmissible and ignores significant contrary evidence as discussed in the subsection on pretext. *See infra* Part II.b.2.

Plaintiff attempts to show discrimination by pointing to evidence that other employees were treated differently than he was. "To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Plaintiff testified that other employees left the premises while on duty and were not terminated. (ECF No. 53 at 39.) Yet Plaintiff relies only upon his own speculative testimony, which lacks foundation. (*See* Kolkebeck Dep. at 57:1–61:25 ("She never told me specifically, but I'm certain she is not [clocking out prior to leaving the premises].").) Next, Plaintiff suggests that other employees committed major rule violations and were not terminated, while Plaintiff was terminated for his first major rule violation (leaving the premises while on duty). Plaintiff asserts

that E. Chris Burton was written up for a major rule violation related to attendance but was not terminated. (ECF No. 53 at 40 & Ex. 19.) Yet Plaintiff does not actually show that this constituted a major violation, let alone that it was significantly similar to his own. Case law is unclear about how far Plaintiff's view of the evidence must be indulged here. In any event, for reasons discussed below, Plaintiff fails to meet his burden to produce evidence of pretext. Accordingly, for purpose of the court's analysis, it will assume that Plaintiff has met his prima facie burden to show Defendant discriminated against Plaintiff when Defendant terminated him.

>    2.  *Pretext*

Defendant offers a legitimate, nondiscriminatory reason for firing Plaintiff: he committed a major rule violation by leaving the store premises while on duty, with another employee, for over thirty minutes without permission. (ECF No. 20.)  Both Plaintiff and the other employee, (Plaintiff's then-girlfriend Thais Ann Farr) who is not disabled, were terminated for this conduct. Plaintiff asserts that this reason is pretextual.

Plaintiff argues that Defendant's treatment of comparator employees who left store premises while on duty, committed rule violations, or read while on duty show Defendant's proffered reasons are pretextual. (ECF No. 53 at 39–40, 45–47.) Plaintiff also argues Defendant's decision to terminate him was subjective and contrary to unwritten policy. (ECF No. 53 at 45–46.) Plaintiff also briefly makes other arguments the court addresses below.

"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007). Summary judgment is appropriate even when Plaintiff offers some evidence of pretext, but that evidence is overwhelmed by the evidence of legitimate motive. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1180 (10th Cir. 1999) ("The evidence overwhelmingly supports Defendant's

proffered reason and Plaintiff presents nothing which would cause a reasonable finder of fact to determine that the reason is unworthy of belief.")

### A.  *Similarly-situated employees*

Plaintiff argues he was treated differently from a number of similarly-situated employees. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Id.*

The undisputed facts show that at the same time Plaintiff was terminated for leaving the workplace while on duty, another non-disabled employee was terminated for the same conduct, by the same management, for the same incident. (ECF No. 53 at 13–16 (setting forth Plaintiff's response to Defendant's statement of undisputed facts regarding the incident).) Plaintiff left the workplace on the day in question with his then-girlfriend, Thais Ann Farr, who was also employed by Defendant. Both employees were later terminated for this conduct. (*See id.*) Ms. Farr is not disabled. As Plaintiff rightly conceded during oral argument, Ms. Farr presents a "bad fact." One to which Plaintiff offers no response or explanation.

Plaintiff attempts to show pretext by arguing that other employees committed "worse" violations of policy but were not fired. Plaintiff's comparisons to other employees who committed comparable or "worse" violations injects an unnecessary apples-to-oranges comparison because the undisputed facts show there is a comparator who was disciplined for this very incident by the same management. Given this undisputed evidence, Plaintiff has not "show[n] that he was treated differently than other similarly[-]situated employees who violated work rules of comparable seriousness." *Aramburu* at 1404. He was treated equally to the closest

factual comparator. Accordingly, the District Court should grant summary judgment to Defendant on Plaintiff's discrimination claim.

Alternatively, even if the District Court does not find that Ms. Farr's presence ends the inquiry, Plaintiff does not meet his burden to produce evidence bearing on pretext.

### i.   Other employees absent while on duty

Plaintiff has not supported his claim that Defendant knew other employees were absent while on duty with admissible evidence. Without evidence Defendant was aware of the alleged infractions, Plaintiff cannot demonstrate pretext. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) ("a challenge of pretext requires [the court] to look at the facts as they appear to the person making the decision to terminate plaintiff.") Even crediting Plaintiff's testimony that these employees were absent, he offers no evidence Defendant was aware of the absences. (*See* ECF No. 53 at 16–17 (undisputed[4] fact that managers did not know of other employees' alleged conduct.) Plaintiff attempts to show Defendant was aware by citing Mr. Reeves' testimony that Mr. Burton arrived at work with cups from an adjacent store and that Mr. Reeves saw these cups. (ECF No. 53 at 39.) Yet, this is not evidence that Mr. Burton left the store while on duty. Instead, it is evidence Mr. Burton "came to work" with these cups. This explains their presence in the department, but does not suggest Mr. Burton left while on duty. Thus, Plaintiff has not shown disparate treatment.

### ii.   Other employers who committed major violations

As to the other alleged major violations, Plaintiff has not created a genuine issue of material fact that his discharge was pretextual. The acts Plaintiff describes are sufficiently

---

[4] Plaintiff attempts to dispute this fact, but offers no evidence that Defendant or its managers were aware of the alleged conduct.

different to warrant Defendant's decision not to terminate the employees. *See Kendrick* at 1233 (finding, on review of summary judgment, that an employer could impose lesser discipline for "assault with a deadly weapon" than "pushing another person in anger" because the offenses were sufficiently different). Plaintiff's violation involved receiving pay for time he was not working and not on the premises. Defendant treats this as a matter of honesty and integrity. (ECF No. 53, Ex. 21.)  None of the other alleged violations include such a charge. As the Tenth Circuit has noted, a "company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct." *Kendrick* at 1233. The court's "role is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments." *See id.* The court is particularly troubled by the invitation to compare Plaintiff to other comparators because a nondisabled employee received identical discipline to Plaintiff in the same incident for which Plaintiff was terminated.

iii.    <u>Other employees who read on the job</u>

Plaintiff asserts that Mr. Burton and Ms. Berg also read on the job, but were not written up for their conduct. (ECF No. 53 at 40.) Defendant points out that neither employee is a proper comparator because they do not report to the same supervisor, and were not disciplined by the same supervisor. (ECF No. 56 at 28.) Likewise, Defendant points out that Ms. Berg and Mr. Burton were both disciplined (verbal warning and notation in performance evaluation respectively). (*Id.*)

Plaintiff argues that comparators need not report to the same supervisor. Plaintiff cites two cases that do not address this issue. (ECF No. 53 at 38 (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 (10th Cir. 1996); *and Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)).) Finally, the *Smothers v. Solvay Chemicals, Inc.*, case involved discipline imposed

by a committee and five of the six committee members were the same in the comparator case. 740 F.3d 530, 540 (10th Cir. 2014). Plaintiff points to no such congruity here. At oral argument, Plaintiff argued that because the store manager was the same, the court should treat all comparators as having the same supervisor. This argument is not supported by authority.[5] Here, the minor differences in discipline meted out are explained by the different supervisors who acted. *See Kendrick* at 1233 ("Different supervisors will inevitably react differently to employee insubordination.").

### B.  Subjective criteria or exercising discretion in a manner contrary to policy

Plaintiff argues that the use of subjective criteria, or exercising discretion in a manner that violates written or unwritten policy, constitutes evidence of pretext. Plaintiff's argument is somewhat broadly stated. Plaintiff cites two cases. The first, *Simms*, found the employer did not utilize improper subjective considerations and acted consistent with its own policies. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999). In the second case, *Kendrick*, the court analyzed alleged disparate treatment of employees and concluded plaintiff there had not produced evidence that defendant violated an unwritten policy. *Kendrick* at 1230–34.

Plaintiff does not argue that Defendant acted contrary to a policy (other than perhaps an unwritten policy of allowing comparators to be absent while on duty, but the court rejects that argument for the reasons previously stated). Instead, as Plaintiff clarified at oral argument, his argument is that any discretion left in the hands of managers allows the court to infer improper subjective considerations and thus pretext. The cases cited suggest the court should reach the

---

[5] With regard to some of the alleged comparators, it is likewise unsupported in fact. Defendant indicated the store manager changed between the time discipline was imposed against Mr. Ware and the time Plaintiff was hired. (ECF No. 62.)

opposite conclusion here. *See, e.g.*, *Simms* at 1330 (finding the "[employer]'s decision to hire [an employee other than plaintiff] based on his supervisory experience is not the kind of subjective decision that, by itself, suggests pretext."). Like the employer in *Simms*, Defendant has the discretion to act consistent with its own policies, even if it exercises discretion when doing so.

### C.  Plaintiff's "exemplary" record

Plaintiff cites no authority to support this particular argument. Plaintiff simply argues that Defendant's August 2011 decision to terminate an employee described as a "top performer" in April 2011 "is implausible, inconsistent, and unworthy of credence." The court is cognizant of this legal standard, but simply disagrees with Plaintiff's conclusion. The court is unaware of any authority that suggests federal courts provide greater protections to valuable employees. Likewise, given Plaintiff's admitted misconduct (arriving late and reading while on duty) his worth as an employee may have diminished following the April 2011 evaluation.

### D.  Thirty-minute breaks

Plaintiff clarified during oral argument that he was terminated for leaving the premises while on break, not for the length of his break. Accordingly, while this argument may have discouraged Defendant from making much of the length of Plaintiff's break, it otherwise has little bearing on this case. Plaintiff asserts that a thirty-minute break is acceptable "with a manager's permission." Plaintiff offers no evidence that he asked to take a thirty-minute break. Also, the undisputed facts demonstrate he had no permission to leave during his break, regardless of its length. (ECF No. 53 at 16 ("[Kolkebeck] knew Home Depot policy prohibited leaving while clocked in, and that he did not have permission to leave.").) Plaintiff was terminated for being off the work premises while on break; not for the length of that break.

E. *2010 Reeves promotion*

Plaintiff discourteously suggests that the "'business' that Reeves owned was nothing more than a licensed pest control operator." (ECF No. 53 at 22.) Plaintiff then argues that promoting Reeves over Plaintiff shows disparate treatment. Yet, as discussed previously with regard to "subjective criteria" Defendant's decision appears to be quite similar to the decision in *Simms* where the Tenth Circuit found preference for one legitimate criteria over another did not constitute discrimination. *See Simms* at 1330 (approving preference for supervisory experience). Here, like *Simms*, Defendant was free to favor business-ownership experience over other qualifications. Further, at oral argument Plaintiff did not dispute Defendant's claim that Mr. Reeves had worked for Home Depot longer than Plaintiff at the time Mr. Reeves was promoted. Tenure would provide yet another non-discriminatory basis for Defendant to use to favor one employee over another.

Based on the foregoing, the court will recommend the District Court grant summary judgment on Plaintiff's ADA discrimination claim. Plaintiff fails to produce evidence that creates a genuine issue of material fact that could suggest Defendant's proffered reason for termination was pretextual. This includes consideration of both the items discussed in the pretext analysis, and those events alleged to constitute discrimination. *See supra* Part II.b.1. While the pretext analysis above necessarily requires the court to examine evidence, the Tenth Circuit has found it does not constitute an impermissible weighing of facts. On summary judgment "the court acts as a gatekeeper, granting judgment as a matter of law unless the plaintiff has adduced relevant and probative evidence sufficient to support a jury verdict in his or her favor." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007); *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("an employer would be entitled to judgment as a

matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1180 (10th Cir. 1999) ("The evidence overwhelmingly supports Defendant's proffered reason and Plaintiff presents nothing which would cause a reasonable finder of fact to determine that the reason is unworthy of belief."). Plaintiff's discrimination claim fails as a matter of law.

### III. Plaintiff raises a genuine dispute of material fact about whether Defendant retaliated against him, but does not meet his burden of production to show Defendant's proffered reason for terminating Plaintiff was pretextual

"[T]o establish a prima facie case of retaliation, [Plaintiff] must show: (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (quotation omitted). Plaintiff offers no direct evidence of retaliation. Thus, the court utilizes the *McDonnell Douglas* burden-shifting analysis, which required Plaintiff to "present evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1209.

#### a. Parties' arguments

Defendant's final argument challenges Plaintiff's retaliation claim. Defendant believes this claim is deficient for three reasons. First, Defendant argues that Plaintiff did not participate in "protected activity" because he did not make a complaint that he was being discriminated against based on his stutter. (ECF No. 50 at 23.) Second, Defendant argues that Plaintiff cannot

demonstrate that he was disciplined or terminated as a result of his purported protected activity because Defendant terminated Plaintiff for an admitted rule violation and the managers who initiated the discipline were not even aware of the alleged protected activity. (*Id.* at 23–24.) Third, even if Plaintiff can prove his prima facie case, he is unable to show Defendant's proffered justification for terminating Plaintiff was pretextual. (*Id.* at 24–25.)

Plaintiff argues that he engaged in protected activity by complaining in June 2011 to Mr. Buchanan about a performance review and by stating to Mark Sainsbury on August 6, 2011, that "[Plaintiff] would like to make a formal complaint of discrimination and retaliation regarding the write[-]up that was subsequent to [his] discussion with Mr. Buchanan." (ECF No. 53 at 41 (quoting Kolkebeck Dep. at 40:8–12).)  Plaintiff next argues that Defendant misstates the causation standard and that Plaintiff can meet the correct causation standard for an ADA retaliation case. (ECF No. 42–43.) Finally, Plaintiff argues he can show pretext based on the temporal proximity of his termination to his protected activity and because he was a "top performer" prior to his protected activity, but unfairly disciplined afterward. (ECF No. 43–44.)

### b.  Analysis

#### 1.  *Prima facie retaliation case*

Plaintiff establishes a prima facie case of retaliation by showing temporal proximity between his discrimination complaint and his termination.

##### A.  Protected activity

Plaintiff testified that he complained of discrimination on the basis of his stutter in June 2011 and on August 6, 2011, protected activity. (Kolkebeck Dep. 33:10–19, 40:8–12 (stating Plaintiff "would like to make a formal complaint of discrimination and retaliation . . . .").) Plaintiff's deposition testimony appears sufficient to at least raise a genuine issue of material fact as to whether he engaged in this protected activity. Defendant attempts to rebut this by citing its

employees' depositions that deny Plaintiff made these complaints, and asserting that any complaints he made were related only to feeling "picked-on" generally, but not on the basis of his stutter. This is a classic dispute of material fact that should be resolved by a factfinder making a credibility determination. *See Prickett v. Amoco Oil Co.*, 147 F. Supp. 2d 1147, 1157 (D. Utah 2001), *aff'd*, 31 F. App'x 608 (10th Cir. 2002).

### B. Adverse action

Next, there does not appear to be any dispute that Plaintiff's termination constitutes adverse action. Plaintiff does not explicitly address what activities constitute the adverse action taken in retaliation for his discrimination complaint, though Plaintiff's arguments focus on his termination, which undoubtedly qualifies as adverse action, as described above. *Supra* Part II.b.1.E; *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (defining adverse employment action as, among others, "firing" an employee).

### C. Causation

Third, the temporal proximity of Plaintiff's protected activity and his termination establish a causal link sufficient to establish a prima facie case. The parties seriously debate whether Plaintiff must meet a but-for or motivating-factor standard for causation in the Tenth Circuit. Defendant identifies the correct standard, but Plaintiff meets that standard.

Even the authority Plaintiff cites suggests a but-for causation standard applies here. Plaintiff argues that the District of Oregon refused to apply the but-for standard of causation from *University of Texas Southwestern Medical Center v. Nassar*, to ADA claims. *See Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 977 F. Supp. 2d 1058, 1060 (D. Or. 2013) (discussing ___ U.S. ___, 133 S.Ct. 2517 (2013)). Plaintiff is incorrect. Instead, the District of Oregon stated "the causation standard for ADA *discrimination* claims is 'motivating factor.'" *Id.* at 1062 (emphasis added). That same court also noted that the standard for

retaliation claims is different: "Lower courts have applied the *Nassar* holding to ADA *retaliation*

claims, however, no ADA retaliation claim is at issue in the pending case." *Id.* at 1063 n.1. The

court then cited an Arizona case in which the trial court applied *Nassar* and concluded that a

plaintiff alleging retaliation under the ADA must establish but-for causation. *See id.* (citing

*E.E.O.C. v. Evergreen All. Golf Ltd., LP*, No. 11-0662, 2013 WL 4478870, at *11 (D. Ariz. Aug.

21, 2013) ("Retaliation claims require proof by a preponderance of the evidence that the adverse

employment action would not have occurred in the absence of the protected activity.")

Moreover, this court, like the District of Kansas, finds it likely that the Tenth Circuit will apply

*Nassar* to ADA retaliation claims. The District of Kansas recently applied *Nassar* to an ADA

retaliation claim:

> The Supreme Court has recently clarified that a Title VII plaintiff asserting a
> claim of retaliation must show that his protected activity was the but-for cause of
> the alleged adverse employment action, and not merely a motivating factor. The
> ADA uses similar "because" language, and the Tenth Circuit has consistently
> applied the Title VII framework to ADA retaliation claims.

*Nyanjom v. Hawker Beechcraft Corp.*, No. 12-1461, 2015 WL 3397934, at *19 (D. Kan. May 26,

2015), *aff'd*, 641 F. App'x 795 (10th Cir. 2016). Accordingly, the court finds that Plaintiff must

establish but-for causation.

Nonetheless, this distinction makes no practical difference here. Defendant never offers

an analytical difference between but-for and motivating-factor causation standards in the context

of this case. The Tenth Circuit does not draw a distinction that affects the court's analysis. *See*

*Cruces v. Int'l Down & Feather Testing Lab.*, 956 F. Supp. 2d 1299, 1314 (D. Utah 2013)

(noting the Tenth Circuit's decision that the Supreme Court's opinion in *Nassar*, which adopted

a but-for causation standard, did not significantly alter the causation analysis on a motion for

summary judgment on plaintiff's Title VII claim). Indeed, several Tenth Circuit decisions have

upheld findings that temporal proximity of protected activity to adverse employment action is sufficient to demonstrate causation for purposes of a prima facie case. (ECF No. 56 at 48–49 (citing *Annett v. Univ.of Kansas*, 371 F.3d 1233 (10th Cir. 2004).) The Tenth Circuit has found that such proximity is "evidence of circumstances that justify an inference of retaliatory motive." *Id.* at 1239–40. While *Nassar* could possibly call those cases into question, this District and at least one court in the District of Kansas applied the temporal-proximity rule even after the *Nassar* case. *See Cruces* at 1316; *Downs v. Jostens, Inc.*, 23 F. Supp. 3d 1332, 1338 (D. Kan. 2014). Accordingly, temporal proximity appears to establish an issue of material fact regarding causation even when applying the but-for standard.

Here, Plaintiff was terminated within days of his protected activity. The Tenth Circuit has affirmed decisions finding much shorter periods sufficiently proximate. *See, e.g.*, *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (finding one and one half months sufficiently proximate). Accordingly, Plaintiff met his prima facie burden by raising an issue of material fact about whether his protected activity led to his termination.

### 2.  *Pretext*

Plaintiff has not shown a dispute of material fact that could establish pretext. Plaintiff relies on many of the same facts to show pretext, but asserts a few additional facts that must be addressed. As Defendant correctly notes, temporal proximity alone does not establish pretext. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) (close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment.") In addition to the temporal proximity, Plaintiff argues that he went from a valued associate to the target of unfounded discipline after he first complained of discrimination in June 2011. Plaintiff also points to the treatment of other employees discussed above.

The court finds that Plaintiff fails to raise an issue of material fact to preclude summary judgment. The disparate treatment claims, and Plaintiff's claim that he was a valued employee have been discussed. As stated previously, the termination of Ms. Farr along with Plaintiff defeats his attempts to demonstrate pretext because a non-disabled employee was terminated fro the exact incident for which Plaintiff was terminated. Moreover, as to the purported lack of justification for Defendant's disciplinary actions taken against him, the court does not find that Plaintiff has shown an instance of unjustified discipline.

Plaintiff asserts that his June 22, 2011 discipline for reading at the paint desk evidences pretext. Yet, Kolkebeck admits he was reading one time at the paint desk. Kolkebeck only argues that it was not three times as indicated in the discipline. (ECF No. 53 at 11–12 (addressing Defendant's fact twenty-one).) Regardless of the number of times Plaintiff read, he admits to engaging in this misconduct. Thus, the discipline is not unfounded.

Next, Plaintiff alleges that "[i]n response to Kolkebeck's complaint on August 6, 2011, Sainsbury finished many of Kolkebeck's sentences and threatened to terminate his employment." (ECF No. 53 at 44.) Yet, this claim ignores an undisputed fact Plaintiff himself sets forth in which he states that Mr. Sainsbury told Plaintiff he would be fired "if he made *false* allegations." (ECF No. 56 at 35–36 (emphasis added).) Thus, by Plaintiff's own account this was not a threat in response to protected activity but a warning about false allegations.

Third, Plaintiff points to the August 11 discipline for not completing an assignment and losing "audit papers." (ECF No. 53 at 44.) Yet, Plaintiff never explains what was unfounded about this discipline. Plaintiff testified that he "got through as much as [he] could before [he] had to leave for the day" Plaintiff then testified he left without completing the paperwork and when it returned the next day it was "gone." (Kolkebeck Dep. 90:18–91:7.).) The facts underlying this

discipline are undisputed; Plaintiff did not turn in a completed assignment and could not account for the whereabouts of the paperwork.

Finally, Plaintiff suggests that he was written up for arriving tardy only after his complaint to Mr. Sainsbury. There are two flaws with this argument. First, it merely repeats the temporal proximity argument. Second, the discipline was justified by Plaintiff's admission that he was tardy at least seven times. (ECF No. 53 at 12 (addressing Defendant's fact twenty-two).)

Based on the foregoing, the court will recommend the District Court grant Defendant's motion for summary judgment on Plaintiff's ADA retaliation claim, and thus on Plaintiff's entire case. Although the legal analysis is somewhat complex, this case can be summarized simply. Plaintiff alleges that he was discriminated, or retaliated, against on the basis of his disability when he was fired for leaving the work site while on duty. Yet a nondisabled co-employee was fired for the same incident. Plaintiff does not address this issue in his briefing and was unable to offer any response to the court's inquiry during oral argument. Instead, Plaintiff turns a blind eye to this comparator and aggregates a number of incidents with tenuous relation to one another, hoping the court will infer some evidence of pretext. Simply put, the incidents alone, or combined, do not suggest pretext. Rather, the incidents are a series of acceptable actions taken by Defendant. Plaintiff's post-hoc attempts to inject discriminatory motive must be rejected.

## RECOMMENDATION

For the reasons discussed above, the court **RECOMMENDS** the District Court **GRANT** Defendant's Motion for Summary Judgment and enter judgment in favor of Defendant on both of Plaintiff's claims. (ECF No. 50.)

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object.  Within **fourteen (14) days** of being served with a copy,

any party may serve and file written objections.  Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 9th day of September, 2016.          By the Court:

_____

Dustin B. Pead
United States Magistrate Judge